UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

In re:                                             Case No.: 6:15-bk-07275-KSJ
                                                   Chapter 11
PROGRESSIVE PLUMBING, INC.

PROGRESSIVE SERVICES, LLC and                      Jointly Administered with
GRACIOUS LIVING DESIGN                             Case No. 6:15-bk-07276-KSJ
CENTER, INC.,                                      Case No. 6:15-bk-07277-KSJ

       Debtors.
_____/

PROGRESSIVE PLUMBING, INC.,

       Plaintiff,

v.                                                 Adversary Proceeding No.
                                                   No. _____

KAST CONSTRUCTION III, LLC, a Florida
limited liability company, and MICHAEL
MACDONALD, an individual,

       Defendants.

_____/

## COMPLAINT

Progressive Plumbing, Inc. ("Progressive" or "Debtor"), Plaintiff, by and through undersigned counsel, sues Kast Construction III, LLC ("Kast"), a Florida limited liability company, and Michael MacDonald, an individual ("MacDonald," and together with Kast, the "Defendants", and as grounds thereof state as follows:

## PARTIES, JURISDICTION AND VENUE

1.     On August 24, 2015 (the "Petition Date"), Progressive filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code, 11 U.S.C. § 101 *et seq*. (the "Bankruptcy Code").

2.     This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157, 1334, & 1367.

3.     Venue of the bankruptcy case and this adversary proceeding in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4.     This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (E) & (O).

5.     Plaintiff Progressive is a Florida corporation with its principal place of business at 1064 West Highway 50, Clermont, Florida 34711.

6.     Defendant Kast is a Florida limited liability company with its principal place of business at 701 Northpoint Parkway, Suite 400, West Palm Beach, Florida 33407.

7.     Defendant MacDonald is an individual who, upon information and belief, resides in Palm Beach County, Florida.

## GENERAL ALLEGATIONS

### *The Water Club – North Palm Beach Contract*

8.     Progressive and Kast entered into a subcontract agreement dated January 12, 2015, for plumbing subcontractor services at The Water Club – North Palm Beach, Florida for a total contract value of $4,684,257.00 (the "NPB Contract").  A copy of the NPB Contract is attached as **Exhibit A**.

9.     MacDonald is a senior project manager for Kast and was the project manager for the NPB project.

10.     On October 19, 2015, at Kast's direction, Progressive started work on the NPB Contract prior to the execution of the NPB Contract and prior to Progressive securing a bond for the project.

11.     On October 29, 2014, Progressive's surety sent a letter of bondability to Kast.

12.     In the meantime, Progressive continued to provide services and labor on the project.

13.     Progressive received the NPB Contract on January 6, 2015 and signed it on January 12, 2015.

14.     The NPB Contract requires that Progressive be bonded for the project.

15.     On January 28, 2015, Progressive notified Kast and MacDonald that its surety would not bond the job, despite the letter of bondability.

16.     On January 30, 2015, MacDonald, on behalf of Kast, sent a default letter notifying Progressive that the failure of Progressive to secure bonding in 48 hours "shall constitute a default" under the NPB Contract (the "Default Letter").  A copy of the Default Letter is attached hereto as **Exhibit B**.

17.     On January 30, 2015, at 9:32 a.m., MacDonald followed up with an email to Billy Lawson of Progressive stating that "it was decided that we must enforce the requirement for providing the Bond."  A copy of this email is attached hereto as **Exhibit C**.

18.     Also on January 30, 2016, Bob Vail ("Vail") of Kolter Urban ("Kolter"), the owner of the project and an affiliate of Kast, had a telephone conversation with Billy Lawson of Progressive.  In that conversation, Vail told Billy Lawson that Kast would doing everything it could to work around the bonding issue and would implement other protections like owner direct purchases and joint check payments to vendors and subcontractors.

19.     Between February 2 - 6, 2015, MacDonald instructed Billy Lawson of Progressive to have Progressive continue to provide labor and material pursuant to the NPB Contract, which Progressive did.  Attached as **Composite Exhibit D** are a series of emails

between Progressive, employees of Progressive, and vendors regarding the continued labor and materials provided on site.

20.     On February 6, 2015, at 3:17 p.m., MacDonald sent an email to Progressive requesting that Progressive revise its payment application, and MacDonald followed up at 4:13 p.m. requesting further documentation and asking for the payment terms to be changed to cost plus 15%.  A copy of this email chain is attached hereto as **Exhibit E**.

21.     On February 10, 2015, in exchange for waiving the default for failure to procure bonding, MacDonald and Progressive reach an agreement to revise the compensation under the NPB Contract to cost plus 20% rather than cost plus 15% as previously offered.

22.     Progressive complied with MacDonald's request understanding that the request was made as a condition of waiving the bonding requirement, and Progressive switched all pending and future pay applications to cost plus 20%, a significant concession in the amounts due monthly to Progressive under the NPB Contract.

23.     On February 10, 2015, at 11:28 a.m., MacDonald sent an email to Progressive requesting additional information on Progressive's labor and materials, using the lack of information as the excuse for why Progressive had still not been paid any of its draws.  A copy of the email is attached hereto as **Exhibit F**.

24.     Pursuant to this amended arrangement, Progressive continued to provide labor and materials under the NPB Contract.

25.     On February 19, 2015, at 9:06 a.m., Progressive emailed Kast asking whether Kast had been funded (because if Kast had been funded, Kast would be required to pay Progressive under the NPB Contract).  Krista Phillips with Kast responded, cc'ing MacDonald, that Kast had been funded but that MacDonald was not yet ready to release any funds to

Progressive until he received still more information.  A copy of this email chain is attached hereto as **Exhibit G**.

26.     On February 20, 2015, at 9:52 a.m., MacDonald emailed Billy Lawson requesting information on vendor orders.  A copy of this email is attached hereto as **Exhibit H**.

27.     In the meantime, Progressive continued providing labor and materials under the NPB Contract, and continued to request funding from Kast.

28.     Finally, after repeated requests from Progressive as to the status of payment, on February 26, 2015, at 11:43 a.m., MacDonald sent Kimberley Lawson-Sapp f/k/a Kimberley French ("Kim Sapp") of Progressive an email and stated "Thank you for all the trouble you went through to revise these pay apps and provide the backup.  I completed approvals in Textura, please follow up with me if you do not receive the ACH deposit in the next few days."  A copy of this email is attached hereto as **Exhibit I**.

29.     Kim Sapp followed up immediately thanking MacDonald with an email on February 26, 2015, at 1:27 p.m.  This email is included in Exhibit I.

30.     In response, on February 26, 2015, at 2:08 p.m., MacDonald sent an email stating "We are sympathetic to your business issues and have no problem helping you work through them."  This email is included in Exhibit I.

31.     MacDonald, as agent for Kast, continued to work with Progressive and assured Progressive that Kast would pay Progressive's outstanding pay applications and future pay applications.

32.     On March 5, 2015, Bill Lawson, Sr., and other employees of Progressive, were invited to by Kast, and did attend, a job coordination meeting with MacDonald and other subcontractors to discuss the continued progress and future plans for completing the project.

33.     On March 5, 2015, Bill Lawson, Sr., and MacDonald met and talked in person on the project site to discuss work on the project going forward.

34.     At that meeting on site, MacDonald and Bill Lawson, Sr., also discussed when payment would be coming from Kast for past due amounts.

35.     On March 5, 2015, at 5:52 p.m., Bill Lawson, Sr., emailed MacDonald thanking him for the meeting and telling him that he "look[ed] forward to working with you and your team."  A copy of this email is attached hereto as **Exhibit J**.

36.     Relying on the statements and conduct of MacDonald and Kast, Progressive continued to provide labor and materials under the NPB Contract.

37.     In the meantime, completely unknown to Progressive, on March 6, 2016, Kast executed a replacement contract with Pinnacle Plumbing, Inc., for substantially the same services to be provided under the NPB Contract (the "Pinnacle Contract").

38.     Neither Kast nor MacDonald ever notified Progressive prior to the execution of the Pinnacle Contract that Kast was taking other bids or looking to replace Progressive.

39.     At the time of the above-referenced conversations between MacDonald and Billy Lawson and Bill Lawson, Sr., MacDonald, individually and as agent for Kast, knew that Kast would be terminating the NPB Contract.

40.     But, too keep Progressive on the job, Kast and MacDonald continued to tell Progressive that Kast would continue to work with them and never mentioned the Pinnacle Contract.

41.     On March 9, 2015, at 9:08 a.m., Kim Sapp, still unaware of the Pinnacle Contract, emailed MacDonald asking for the status of payments since no payment had yet been made,

despite MacDonald's promises that payment would be immediately forthcoming in the emails dated February 26, 2015.  A copy of this email is attached as **Exhibit K**.

42.    MacDonald responded by email on March 9, 2015, at 1:09 p.m., apologizing for the delay in payment.  He then stated that he would call Billy Lawson later that afternoon but left the subject matter of that call vague.  This email is included in Exhibit K.

43.    Then, by verbal notification on March 10, 2015 and a letter sent on March 13, 2015, Kast notified Progressive it was terminating the NPB Contract due to Progressive's failure to procure bonding.  A copy of the letter is attached hereto as **Exhibit L**.

44.    The termination was completely inconsistent with multiple statements made to Progressive by Kast and MacDonald that Kast had waived the bond requirement, would continue to work with Progressive, and would pay Progressive for work done based on cost plus 20%.

45.    At the time MacDonald and Kast made those statements to Progressive, MacDonald and Kast knew that Kast did not intend to pay Progressive and that Kast actually intended to terminate the NPB Contract and replace Progressive with another contractor.

46.    Kast and MacDonald made the above-described statements to induce Progressive to continue working on the project.

47.    Kast and MacDonald made those statements knowing and intending that Kast would never pay Progressive for the continued or past work, and planning instead to use the bonding issue later as an excuse.

48.    By continuing to request and accept work from Progressive after learning of Progressive's inability to get a bond for the project, by agreeing to amend the payment terms in lieu of requiring a bond, and by express statements that Kast would continue to work with

Progressive despite the lack of bonding, Kast knowingly and voluntarily waived any default under the NPB Contract related to bonding.

49.    Using the cost plus 20% modified approach, Progressive is owed $204,884.12 which includes work completed from October 2014 through March 10, 2015.

50.    Progressive only agreed to change the payment structure to cost plus 20% in exchange for Kast agreeing to waive the bonding requirement.

51.    Under the original payment structure of the NPB Contract, Progressive is owed $278,058.22 which includes work completed from October 2014 through March 10, 2015.

52.    Kast has failed to pay Progressive these funds, and continues to refuse to pay these funds despite demand.

53.    On July 6, 2015, Progressive's attorney Michael C. Sasso, Esq., sent a letter to Kast again demanding payment (the "Demand Letter").  A copy of the July 6, 2015, letter is attached hereto as **Exhibit M**.

54.    The NPB Contract provides for the payment of attorney's fees and costs to the prevailing party in any dispute.

### *Conversion of the Booster System*

55.    In the course of providing labor and materials on the project under the NPB Contract, Progressive brought to the job site a custom built temporary booster hydraulic pump based off of a 2008 Vickery Model 1VC-G-TH(X) (the "Booster System").

56.    The Booster System was of a custom design, patent pending, and will cost Progressive at least $15,000.00 to replace.

57.    The Booster System was property of the estate.

58.    In the Demand Letter, Progressive requested the return of the Booster System.

59.     During the course of the bankruptcy, Kim Sapp asked MacDonald about coordinating a time for Progressive to pick up the Booster System, and MacDonald told her that anyone who came to pick it up would be arrested.

60.     On May 18, 2016, Progressive filed its Debtor's Motion for Turnover (Doc. 285), requesting that Kast immediately turnover the Booster System.

61.     On June 28, 2016, the Court entered its Order Granting Debtor's Motion for Turnover of Property of the Estate (the "Turnover Order") (Doc. 358) and directing Kast to turnover the Booster System to Progressive.

62.     Counsel for Kast then contacted counsel for Progressive regarding turnover of the Booster System, stating that the Booster System was on site, sending a picture of the Booster System, and stating that it was ready for pickup.

63.     However, when Progressive went to coordinate pickup for the Booster System, Kast informed Progressive that the Booster System had been lost.

***The Water Club – St. Pete Contract***

64.     In addition to the NPB Contract, Progressive and Kast entered into a subcontract agreement dated May 20, 2013, for plumbing subcontractor services at The Water Club in St. Petersburg, Florida (the "STP Contract").   A copy of the STP Contract is attached hereto as **Exhibit N**.

65.     Progressive completed the STP Contract on time and was assured by Kast that Progressive would receive its payment promptly.

66.     In exchange for promises to make payment of all past due balance promptly, Progressive agreed to waive $13,612.86 in change orders.

67.     After agreeing with Progressive to make payment promptly in exchange for the waiver of the change orders, Kast still refused to pay Progressive, eventually informing Progressive that it was refusing to pay based solely on an alleged right to setoff for amounts allegedly due by Progressive on the NPB Contract.

68.     Progressive is still owed $24,800.26 on the STP Contract and $13,612.86 in change orders, for which payment is and has been due.

69.     Pursuant to 11 U.S.C. § 524, any alleged debt owed to Kast by Progressive under the NPB Contract has been discharged as Kast failed to file a proof of claim or otherwise take any action in the chapter 11 and a plan has been confirmed.

70.     Moreover, as there was no default by Progressive under the NPB Contract, setoff was and is improper.

71.     The STP Contract provides for the payment of attorney's fees and costs to the prevailing party in any dispute.

72.     Progressive has hired this law firm to represent it in this action, for which Progressive has agreed to pay a reasonable fee.

73.     All other conditions precedent to this action have been met, waived or have otherwise been satisfied.

**COUNT I**
**(ACTION AGAINST KAST TO COMPEL COMPLIANCE**
**WITH TURNOVER ORDER OR PROVIDE VALUE IN LIEU)**

74.     Progressive realleges and incorporates herein by reference the allegations contained in paragraphs 1 through 73 above, as though fully set forth herein.

75.     Pursuant to the Turnover Order, Kast was directed to deliver the Booster System to Progressive.

76.     Kast failed to do so and now claims the Booster System is lost.

77.     11 U.S.C. § 542 provides as follows:

> Except as provided in subsection (c) or (d) of this section, an entity, other than a custodian, in possession, custody, or control, during the case, of property that the trustee may use, sell, or lease under section 363 of this title, or that the debtor may exempt under section 522 of this title, shall deliver to the trustee, and account for, such property **or the value of such property**, unless such property is of inconsequential value or benefit to the estate.

(emphasis added).

78.     Kast is therefore required to pay the value of the Booster System, which Kast has failed to do.

79.     The replacement value of the Booster System, which is a custom modification, is at least $15,000.00.

WHEREFORE, Progressive respectfully requests that this Court enter a judgment in favor of Progressive and against Defendant in the amount of $15,000.00, and for such other and further relief as the Court deems just and proper.

## COUNT II
## (CONVERSION AGAINST KAST –
## IN THE ALTERNATIVE TO COUNT I)

80.     Progressive realleges and incorporates herein by reference the allegations contained in paragraphs 1 through 73 above, as though fully set forth herein.

81.     The Booster System is property of Progressive.

82.     Kast refused to turnover the Booster System despite demand.

83.     Kast wrongfully refused to allow Progressive to pickup the Booster System threatening arrest.

84.    Upon entry of the Turnover Order, Kast agreed to allow Progressive to pickup the Booster System, but then lost the Booster System or otherwise disposed of the Booster System.

85.    Such actions are the wrongful assertions of dominion by Kast over Progressive's property and inconsistent with Progressive's ownership of the Booster System.

86.    These actions by Kast have caused Progressive damages in the amount of $15,000.00, or the replacement value of the Booster System.

WHEREFORE, Progressive respectfully requests that this Court enter a judgment in favor of Progressive and against Defendant in the amount of $15,000.00, and for such other and further relief as the Court deems just and proper.

## COUNT III
## (BREACH OF CONTRACT AGAINST KAST– NPB CONTRACT)

87.    Progressive realleges and incorporates herein by reference the allegations contained in paragraphs 1 through 73 above, as though fully set forth herein.

88.    Under the NPB Contract, Kast was required to pay Progressive for services and materials provided on the project.

89.    For services and materials provided between October 19, 2014, and March 10, 2015, Progressive is owed $278,058.22, which amounts Kast has failed to pay despite demand.

90.    Kast's failure to pay has caused Progressive damages in the amount of $278,058.22, plus attorney's fees and costs.

WHEREFORE, Progressive respectfully requests that this Court enter a judgment in favor of Progressive and against Defendant in the amount of $278,058.22, plus attorneys' fees and costs, and for such other and further relief as the Court deems just and proper.

## COUNT IV
## (BREACH OF CONTRACT AGAINST KAST– STP CONTRACT

91.     Plaintiff realleges and incorporates herein by reference the allegations contained in paragraphs 1 through 73 above, as though fully set forth herein.

92.     Under the STP Contract Kast was required to pay Progressive for services and materials provided on the project.

93.     For services and materials provided, Progressive is owed $24,800.26, plus $13,612.86 in change orders, which amounts Kast has failed to pay despite demand.

94.     Kast's failure to pay has caused Progressive damages in the amount of $38,413.12, plus attorney's fees and costs.

WHEREFORE, Plaintiff respectfully requests that this Court enter a judgment in favor of Plaintiff and against Defendant in the amount of $38,413.12, plus attorneys' fees and costs, and for such other and further relief as the Court deems just and proper.

## COUNT V
## (FRAUDULENT INDUCEMENT
## AGAINST KAST AND MACDONALD)

95.     Plaintiff realleges and incorporates herein by reference the allegations contained in paragraphs 1 through 73 above, as though fully set forth herein.

96.     MacDonald, individually and as agent for Kast, knowingly and intentionally made the misrepresentations described herein to Progressive that Kast had waived the bond requirement under the NPB Contract in exchange for changing compensation to cost plus 20%.

97.     MacDonald, individually and as agent for Kast, misrepresented that payment on old amounts was due and would be paid within days, but payment was never made and was never intended to be made by Kast or MacDonald.

98.     MacDonald, individually and as agent for Kast, misrepresented that Kast was sympathetic to Progressive's business issues and would work through them with Progressive.

99.     Each of the misrepresentations were of material facts and were made by Kast to induce Progressive into continuing work on the project while knowing that Kast would eventually terminate the NPB Contract and never pay Progressive.

100.    Kast needed Progressive to continue on the job until it could retain a replacement contractor, and in order to do so, Kast and MacDonald lied to Progressive to keep them on the job.

101.    Progressive justifiably relied on the misrepresentations of Kast and MacDonald in continuing to work on the project, outlaying labor, material, vendor services and suffering loss of other opportunities.

102.    As a direct result of the misrepresentations, Progressive has been damaged and is entitled to an award of damages against Kast for fraudulent inducement and misrepresentation equal to all amounts expended by Progressive in labor and materials.

WHEREFORE, Progressive respectfully requests that this Court enter a judgment in favor of Progressive and against Defendants for actual damages, and for such other and further relief as the Court deems just and proper.

## COUNT VI
## (NEGLIGENT MISREPRESENTATION
## AGAINST KAST AND MACDONALD)

103.    Plaintiff realleges and incorporates herein by reference the allegations contained in paragraphs 1 through 73 above, as though fully set forth herein.

104.    MacDonald, individually and as agent for Kast, made the representations described herein to Progressive that Kast had waived the bond requirement under the NPB

Contract in exchange for changing compensation to cost plus 20%, and MacDonald and Kast knew or should have known that such representation was false.

105.     MacDonald, individually and as agent for Kast, represented that payment on old amounts was due and would be paid within days, but payment was never made and was never intended to be made by Kast or MacDonald, and MacDonald and Kast knew or should have known that such representation was false.

106.     MacDonald, individually and as agent for Kast, represented that Kast was sympathetic to Progressive's business issues and would work through them with Progressive, and knew or should have known that such representation was false.

107.     Each of the misrepresentations were of material facts and were made by Kast to induce Progressive into continuing work on the project while MacDonald and Kast knew or should have known that Kast would eventually terminate the NPB Contract and never pay Progressive.

108.     Kast needed Progressive to continue on the job until it could retain a replacement contractor, and in order to do so, Kast and MacDonald made the representations to Progressive to keep them on the job.

109.     Progressive justifiably relied on the misrepresentations of Kast and MacDonald in continuing to work on the project, outlaying labor, material, vendor services and suffering loss of other opportunities.

110.     Kast and MacDonald made the representations in the course of their business, profession, or employment, and in a transaction in which both had a pecuniary interest, and supplied this false information to Progressive for the guidance of Progressive in making business decisions.

111.    Kast and MacDonald failed to exercise reasonable care or competence in obtaining and communicating the information in the misrepresentations.

112.    As a direct result of the misrepresentations, Progressive has been damaged and is entitled to an award of damages against Kast for negligent misrepresentation equal to all amounts expended by Progressive in labor and materials.

WHEREFORE, Progressive respectfully requests that this Court enter a judgment in favor of Progressive and against Defendants for actual damages, and for such other and further relief as the Court deems just and proper.

Dated this 8th day of August, 2016.

/s/ Michael A. Nardella
Michael A. Nardella, Esq.
Florida Bar No. 051265
Nardella & Nardella, PLLC
250 East Colonial Drive, Suite 102
Orlando, FL 32801
Telephone: (407) 966-2680
Email: mnardella@nardellalaw.com
        greid@nardellalaw.com

Attorney for Plaintiff/Debtor

and

/s/ Roman V. Hammes
Roman V. Hammes, Esq.
Florida Bar No. 087250
Roman V. Hammes, P.L.
1920 N. Orange Avenue, Suite 100
Orlando, FL 32804
Telephone: (407) 650-0003
Email: roman@romanvhammes.com
        lauren@romanvhammes.com

Attorney for Plaintiff/Debtor